People v Sanchez (2020 NY Slip Op 04796)





People v Sanchez


2020 NY Slip Op 04796


Decided on August 26, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SHERI S. ROMAN
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2017-06187
2017-06188
2017-06189

[*1]People of State of New York, respondent, 
v
Samuel Sanchez, appellant.
 Paul Skip Laisure, New York, NY (Lisa Napoli of counsel), for appellant. 


Melinda Katz, District Attorney, Kew Gardens, NY (Charles T. Pollack, John M. Castellano, Johnnette Traill, and Ellen C. Abbot of counsel), for respondent.



DECISION & ORDER
Appeals by the defendant from three orders of the Supreme Court, Queens County (Steven W. Paynter, J.), dated May 17, 2017, which, after a hearing, designated him a level three sex offender pursuant to Correction Law article 6-C under Indictment Nos. 4245/84, 109/90, and 149/90, respectively.
ORDERED that the orders are reversed, on the facts and in the exercise of discretion, without costs or disbursements, and the defendant is designated a level two sex offender under Indictment Nos. 4245/84, 109/90, and 149/90, respectively.
In 1985, the defendant was convicted, upon his plea of guilty, of attempted rape in the first degree in satisfaction of Queens County Indictment No. 4245/84. In 1990, the defendant was convicted, upon his plea of guilty, of sodomy in satisfaction of Queens County Indictment No. 109/90. Also in 1990, the defendant was convicted, upon his plea of guilty, of rape in the first degree in satisfaction of Queens County Indictment No. 149/90. The defendant was granted medical parole in March of 2016.
The defendant failed to preserve for appellate review his contentions that his Sex Offender Registration Act (Correction Law art 6-c; hereinafter SORA) adjudication by the Supreme Court, Queens County, was barred by a prior SORA adjudication in the Supreme Court, New York County, that the purportedly duplicative adjudication denied him due process, and that the Queens County SORA adjudication was barred by the doctrine of res judicata (see People v Lott, 160 AD3d 1458, 1459; People v Madison, 153 AD3d 737; People v Gonzalez, 142 AD3d 541, 542; People v Rivera, 51 AD3d 646, 647).
In any event, these contentions are without merit. The first SORA adjudication, in the Supreme Court, New York County, was based upon a separate RAI prepared in connection with a conviction in New York County, and which was based on, inter alia, the facts underlying that conviction. The present SORA adjudication, in the Supreme Court, Queens County, pertained to convictions in Queens County, and was based upon Risk Assessment Instruments (hereinafter RAIs) that were prepared based on, inter alia, the facts underlying those convictions. Under these circumstances, the Supreme Court, Queens County, properly conducted a SORA adjudication [*2]pertaining to the convictions in Queens County, and that SORA proceeding was not duplicative of the prior New York County proceeding (see People v Fuentes,177 AD3d 788, 789; People v Hirji, 170 AD3d 412, 413; cf. People v Cook, 29 NY3d 114, 119). The prior SORA adjudication in the Supreme Court, New York County, lacked res judicata effect, as that adjudication did not involve the same issues that were raised in the subsequent SORA proceeding in Queens County (see People v Fuentes, 177 AD3d at 789).
However, the Supreme Court improvidently exercised its discretion in denying the defendant's application for a downward departure from the presumptive risk level. "Although utilization of the RAI will generally result in the proper classification in most cases so that departures will be the exception not the rule,' a court is empowered to exercise its discretion and depart from the presumptive risk level based upon the facts in the record" (People v Abdullah, 31 AD3d 515, 516, quoting SORA: Risk Assessment Guidelines and Commentary at 4 [1997] [hereinafter Guidelines] [citations omitted]). "A defendant seeking a downward departure from the presumptive risk level has the initial burden of (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the [SORA] Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence'" (People v Collazo, 179 AD3d 1103, 1104, quoting People v Wyatt, 89 AD3d 112, 128). "If the defendant makes that twofold showing, the court must exercise its discretion by weighing the mitigating factor to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism" (People v Collazo, 179 AD3d at 1104).
Here, the defendant established, by a preponderance of the evidence (see People v Wyatt, 89 AD3d at 128), facts warranting a downward modification of his existing risk level classification to risk level two (see People v Davis, 179 AD3d 183, 189). The medical evidence adduced at the hearing demonstrated that the defendant, who uses a wheelchair, suffered from a stroke in 2009, resulting in permanent paralysis on the right side of his body. A treating physician testified, inter alia, that there is no possibility of improvement of the paralysis condition. He also testified that although the defendant is able to transfer himself from a bed to a wheelchair, he requires assistance in propelling the wheelchair and in transferring himself to a shower stall. In addition, he is unable to stand for any length of time. Furthermore, the record indicates that the defendant had no disciplinary infractions in prison, spanning a lengthy period of time preceding the hearing.
Accordingly, in light of the evidence demonstrating that the defendant's medical conditions greatly diminish the likelihood of reoffense or danger to the community, the Supreme Court improvidently exercised its discretion in denying the defendant's application for a downward departure from the presumptive risk level three to risk level two (see People v Stevens, 55 AD3d 892, 894; see also People v Davis, 179 AD3d 183; People v Hosear, 134 AD3d 633; People v Abdullah, 31 AD3d 515).
DILLON, J.P., ROMAN, DUFFY and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court